IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| THE BOARD OF EDUCATION OF THE APPOQUINIMINK SCHOOL DISTRICT, and THE DELAWARE DEPARTMENT OF EDUCATION, | : : : : : | |
| Plaintiffs, Counterclaim Defendants, and | : : : | C.A. No. 06-770-JJF |
| VALERIE WOODRUFF, SECRETARY OF EDUCATION FOR THE STATE OF DELAWARE, | : : : : | |
| Counterclaim Defendant, | : : | |
| v. | : : | |
| MR. & MRS. SQJ, IV, parents of SQJ, V, | : : : | |
| Defendants, and | : : | |
| MR. & MRS. SQJ, IV individually and on behalf of their son, SQJ, V, | : : : | |
| Counterclaim Plaintiffs. | : : | |

**PLAINTIFFS'/COUNTERCLAIM DEFENDANTS' OPENING BRIEF
IN SUPPORT OF THEIR JOINT MOTION FOR SUMMARY JUDGMENT**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Scott A. Holt, Esquire (No. 3399)
Michael P. Stafford, Esquire (No. 4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone:     (302) 571-6623; 571-6553
Facsimile:      (302) 576-3299; 576-3461
Email: sholt@ycst.com; mstafford@ycst.com
Attorneys for Plaintiff Appoquinimink Sch. Dist.

DEPARTMENT OF JUSTICE
Jennifer L. Kline, Esquire (Bar ID 4075)
102 West Water Street
Dover, DE 19901
(302) 739-7641
Jennifer.kline@state.de.us
Attorney for the Delaware Department of Education and the Secretary of Education, Valerie A. Woodruff

Dated:  December 10, 2007

# TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ................................................................... 1

SUMMARY OF THE ARGUMENT ........................................................................ 4

STATEMENT OF FACTS ........................................................................................ 6

    I.    UNDER THE APPLICABLE STANDARD OF REVIEW, THE COURT HAS THE AUTHORITY TO REVERSE A PART OF THE PANEL'S DECISION THAT IS BASED ON LEGAL ERROR. ........................................................................................ 12

    II.    AS A PARENTALLY-PLACED PRIVATE SCHOOL STUDENT, QUINTON HAS NO INDIVIDUAL RIGHT TO RECEIVE SOME OR ALL OF THE SPECIAL EDUCATION AND RELATED SERVICES HE WOULD RECEIVE IF HE ATTENDED A PUBLIC SCHOOL WITHIN THE DISTRICT. ....................................................................... 14

        A.    Students With Disabilities Who Attend School In The Public System Are Entitled To A Wide Array Of Services Under The IDEA ...................................................... 14

        B.    Students With Disabilities Who Attend Private Schools At The Election Of Their Parents Receive Fewer Services And Entitlements Under The IDEA................................. 16

        C.    Numerous Federal Courts Have Applied These Provisions Of The IDEA, Consistently Finding Districts Owe Limited Duties To Parentally-Placed Private School Students. ....... 21

        D.    The District Engaged In Meaningful Consultation With Private School Officials And Determined The Most Prevalent Area Of Need Among Parentally-Placed Private School Children Is Articulation Of Speech Requiring The Limited Amount of Apportioned Funds To Be Used For Speech And Language Services. ............................................................ 24

        E.    The Panel Committed Legal Error In Holding The District Abused Its Discretion In Refusing To Publicly Fund An Interpreter As A Related Service For Quinton At St. Anne's Episcopal School........................................................................................... 26

CONCLUSION...................................................................................................... 28

                               

# TABLE OF AUTHORITIES

## Cases

*Bay Shore Union Free Sch. Dist. v. T.,*
   405 F. Supp. 2d 230 (E.D.N.Y. 2005) ........................................................... 24, 25, 26

*Carlisle Area Sch. v. Scott P.,*
   62 F.3d 520 (3d Cir. 1995) ............................................................................ 13

*Cefalu v. East Baton Rouge Parish Sch. Bd.,*
   117 F.3d 231 (5th Cir. 1997) ........................................................................ 24

*D.R. v. East Brunswick Bd of Educ.,*
   109 F.3d 896 (3d Cir. 1997) ......................................................................... 13

*Fowler ex rel. Fowler v. Unified Sch. Dist. No. 259,*
   128 F.3d 1431 (10th Cir. 1997) .................................................................... 23

*Gary S. v. Manchester School Dist.,*
   241 F. Supp. 2d 111 (D.N.H. 2003) .............................................................. 23

*Greenland Sch. Dist.* v. *Amy N.,*
   358 F.3d 150 (1st Cir. 2004) ........................................................................ 20

*Hendrick Hudson Bd. of Educ. v. Rowley,*
   458 U.S. 176 (1982) ..................................................................................... 12

*John T. v. Delaware County Intermediate Unit,*
   No. CIV. A. 98-5781, 2000 U.S. Dist.
   LEXIS 6169 (E.D. Pa. May 8, 2000) ........................................................... 23

*John T. v. Marion Ind. Sch. Dist.,*
   173 F.3d 684 (8th Cir. 1999) ........................................................................ 24

*K.R. v. Anderson Community Sch. Corp. ("K.R. I")*
   81 F.3d 673 (7th Cir 1996) ........................................................................... 24

*N.M. v. Sch. Bd. of Miami-Dade,*
   437 F.3d 1085 (11th Cir. 2006) .................................................................... 23

*Nieuwenhuis by Nieuwenhuis v. Delavan-Darien Sch. Dist. Bd. of Educ.,*
   996 F. Supp. 855 (D. Wis. 1998) ........................................................... 15, 24, 25

*Oberti v. Bd. of Educ. of the Borough of Clementon Sch. Dist.,*
   995 F.2d 1204, 1219 (3d Cir. 1993) ............................................................. 12

*S.H. v. State Operated Sch. Dist.,*
   336 F.3d 260, 270 (3d Cir. 2003) ................................................................. 12

*Susan N. v. Wilson Sch. Dist.,*
   70 F.3d 751 (3d Cir. 1995) ............................................................................. 12, 13

*Teague Independent Sch. Dist. v. Todd L.,*
   999 F.2d 127 (5th Cir 1993) ................................................................................. 13

*Town of Burlington v. Dept. of Ed.,*
   736 F.2d 773 (1st Cir. 1984) ................................................................................. 13

*W.E.B. v. Appoquinimink Sch. Dist.,*
   C.A. No. 01-499-SLR, 2003 U.S. Dist. LEXIS 12695 (D. Del. July 8, 2003) ........................ 12

## Other Authorities

14 DE Admin Code §§ 922 through 929 ............................................................ passim

14 *Del. C.* § 3101 ..................................................................................................... 1

14 *Del. C.* § 3135 ................................................................................................. 1, 8

14 *Del. C.* § 3137 ..................................................................................................... 8

14 *Del. C.* § 3142 ..................................................................................................... 2

20 U.S.C. § 1400 ..................................................................................................... 1

20 U.S.C. § 1401 ............................................................................................... 14, 16

20 U.S.C. § 1412 ................................................................................... 15, 16, 17, 25

20 U.S.C. § 1415 ................................................................................................. 2, 11

20 U.S.C. §1415(i)(2)-(3) ....................................................................................... 1

34 C.F.R. § 300 .............................................................................................. passim

34 C.F.R. § 321 ..................................................................................................... 14

42 U.S.C. 1983 ..................................................................................................... 2

DB02:6425852.1                                                                                  059265.1028

## NATURE AND STAGE OF THE PROCEEDINGS

The Board of Education of the Appoquinimink School District ("the District") and the Delaware Department of Education ("the Department") bring this request for judicial review of an administrative hearing decision pursuant to 20 U.S.C. §1415(i)(2)-(3) against Julie and Quinton Johnson, IV ("the Johnsons"), parents of Quinton Johnson, V ("Quinton").  Quinton is a special education student who is deaf and eligible to receive special education and related services under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.,* and 14 *Del. C.* § 3101 *et seq.* ("Chapter 31").  This civil action is brought under the IDEA and Chapter 31.  The District and the Department also rely upon the federal regulations implementing the IDEA at 34 C.F.R. Part 300, and the Department's administrative regulations at 14 DE Admin Code §§ 922 through 929.

In April, 2006, the Johnsons requested an administrative due process hearing from the Department concerning the education of their son in accordance with the IDEA and 14 *Del. C.* § 3135.  In their complaint, the Johnsons generally claimed Quinton's educational needs could not be met in the public school system, and they sought Quinton's placement at a private school (i.e., St. Anne's Episcopal School) at public expense.

Following a three day evidentiary hearing, the administrative hearing panel issued a decision on September 20, 2006 finding the District provided Quinton with a free appropriate public education in compliance with the IDEA.  Despite this finding, the Panel also concluded the District should provide Quinton an interpreter at public expense while he attends St. Anne's

1

Episcopal School as a parentally-placed private school student.  *See*, *Appoquinimink Sch. Dist., et al.*, 47 IDELR 179 (DE SEA Sept. 20, 2006).[1]

On December 18, 2006, the District and the Department initiated this civil action seeking *partial* judicial review of the Panel Decision.  The District and the Department seek a reversal of the Panel Decision, but only with respect to its specific ruling the District should provide a sign language interpreter to Quinton while he attends St. Anne's Episcopal School by the choice of his parents.  The District and the Department do not challenge the Panel's well-reasoned determination that Quinton was offered a free appropriate public education consistent with the IDEA.

On January 24, 2007, the Johnsons filed an Answer to the Complaint, as well as a Counterclaim naming the District, the Department, and Secretary of Education, Valerie Woodruff, as Counter-Defendants.  In their Counterclaim, the Johnsons alleged violations of 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act, the Americans With Disabilities Act, and the IDEA.  By Stipulated Order of November 19, 2007, however, the Johnsons voluntarily dismissed their Counterclaim with prejudice.  In addition, the Johnsons did not appeal the Panel Decision with respect to the finding Quinton was provided a free appropriate public education, and the time has passed for the Johnsons to do so.   *See*, 20 U.S.C. § 1415(i)(2)(B) and 14 *Del. C.* § 3142.

Thus, the sole issue before the Court is the District's and the Department's request for a partial reversal of the Panel Decision related to the specific finding that the District should provide a sign language interpreter to Quinton while he attends St. Anne's Episcopal School as a parentally-placed private school student.

---

[1] The Hearing Decision and Order are located at D.I. 26, Part IX.

This is the District's and the Department's Opening Brief in Support of Their Joint Motion for Summary Judgment.

DB02:6425852.1                                                                      059265.1028

## SUMMARY OF THE ARGUMENT

The Plaintiffs are entitled to judgment as a matter of law on all the claims raised in their Complaint requesting judicial review. In the portion of the Panel's decision that is not before the Court for review, the Panel found that the District made a free appropriate public education available to Quinton and that his parents' decision to enroll him in St. Anne's Episcopal School was a unilateral parental placement. As such, there is no dispute that Quinton is a parentally-placed private school student as that term is defined in the IDEA.

While public school districts have some obligation to provide services to parentally-placed private school students, this obligation is far more limited than the broad entitlement of services available to children with disabilities who attend public schools. First, public school districts must conduct "child find," the process of locating, identifying, and evaluating all children with disabilities who are enrolled by their parents in private schools located within the district. Second, public school districts must allocate a proportional share of federal IDEA funds to provide special education and related services to parentally-placed private school children. The specific types of special education and related services on which the proportional share will be spent is determined through meaningful consultation between the public school district and representatives of private schools located within the district's boundaries.

However, parentally-placed private school students, such as Quinton, have no individual right to receive some or all of the special education and related services they would receive if enrolled in a public school, and they may receive a different amount of services than children with disabilities in public schools. In addition, parents of parentally-placed private

4

school students may not use the due process procedures to present a claim that a district has failed to engage in meaningful consultation with private school officials.

Here, the Panel committed legal error by finding that the District was obligated to fund Quinton's sign language interpreter as a related service at St. Anne's Episcopal School despite his status as a parentally-placed private school student. Indeed, having found that Quinton was a parentally-placed private school student, the Panel lacked the authority to order the provision of special education and related services for him.

## STATEMENT OF FACTS

Defendants, Julie and Quinton Johnson, IV ("the Johnsons"), are the parents of Samuel Quinton Johnson, V ("Quinton"), born April 7, 1995.  The Johnsons reside within the Appoquinimink School District ("the District"). (D.I. 9, ¶3).

Quinton is a twelve year old child who is profoundly deaf and has attended Delaware School for the Deaf, Margaret S. Sterck School, since the age of one.  (D.I. 9, ¶7).  Quinton communicates through American Sign Language ("ASL") and requires a sign language hearing interpreter to access his education.

The Delaware School for the Deaf is a specialized school for deaf and hearing impaired children throughout the State of Delaware.  (D.I. 9, ¶7).  The program is administered by the Christina School District, and the staff have significant expertise in the education of deaf and hearing impaired students.  (D.I. 9, ¶10; D.I. 11, ¶10).  The Delaware School for the Deaf provides students, such as Quinton, with many opportunities for direct communication with deaf peers and teachers in ASL, as well as direct instruction in ASL.  (Id.; D.I. 24, Part I, Taylor pp. 85-86).  Some of the students receive all of their daily instruction at Delaware School for the Deaf, while other students are "mainstreamed" attending traditional public schools with non-disabled peers.  (D.I. 24, Part III, Bosso 15-16; 21).  Students who are mainstreamed receive additional support and services from Delaware School for the Deaf, including sign language interpreters to assist them in communicating with others and accessing their education. (D.I. 24, Part III, Bosso 21-23).

As a result of his hearing disability, Quinton is eligible for special education and related services under the IDEA and Chapter 31.  (D.I. 9, ¶8; D.I. 11, ¶8).  Quinton is entitled to

6

a free appropriate public education ("FAPE") tailored to his unique educational needs through an Individualized Education Program ("IEP"). The IEP must be reasonably calculated to provide Quinton with educational benefit, and it must include a statement of Quinton's present levels of performance, a statement of measurable annual goals, and a description of the special education and related services and supplementary aids and services he will receive. In addition, Quinton's IEP must be developed collaboratively by an educational team ("the IEP team") including Quinton's parents, and a regular education and special education teacher. (D.I. 9, ¶8; D.I. 11, ¶8).

Each school year, Quinton's IEP team developed his IEP outlining his educational program and placement at Delaware School for the Deaf. Quinton's parents eventually disagreed, however, with Quinton's continued placement at Delaware School for the Deaf, and began seeking a private school education for their son. (D.I. 9, ¶10; D.I. 11, ¶10)

### The Johnsons' Request For A Publicly-Funded Sign Language Interpreter At St. Anne's Episcopal School

During the 2005-2006 school year, the Johnsons informed the District they wanted to send Quinton to St. Anne's Episcopal School, a private school located in Middletown, Delaware, within the boundaries of the Appoquinimink School District. (D.I. 9, ¶12; D.I. 11, ¶12). At St. Anne's, however, Quinton needed a full-time sign language interpreter to communicate with other students and teachers and access his education. St. Anne's is not a specialized school for the deaf, nor were there any other deaf or hearing impaired students attending at the time. (D.I. 24, Part II, Koppenhaver, pp. 187-88, 190, 203). In approximately November 2005, the Johnsons asked the District to provide Quinton a sign language interpreter at St. Anne's Episcopal School with public funds. (D.I. 9, ¶12; D.I. 11, ¶12; D.I. 24, Part II, J. Johnson pp. 119-120; D.I. 25, Part V, Ex. 1).

In response, the District explained it could provide Quinton a sign language interpreter as a related service under the IDEA, but only if he attended a school within the public system. (D.I. 9, ¶15; D.I. 11, ¶15). Otherwise, the District explained, children with disabilities who attend private schools by the choice of their parents do not receive the same services they would receive if they were enrolled in the public school system. The District further explained that it does provide some services to parentally-placed private school children, but they are limited to speech and language services consistent with the IDEA and the approach of other public school districts throughout the State. The District advised the Johnsons that a sign language interpreter is not a public service the District would provide to a child with a disability who attends a private school by the choice of the parents. (D.I. 25, Part VI, District Ex. 61).

In an attempt to resolve the Johnsons' concerns about Quinton's education in the public system, the District offered to develop a new IEP for Quinton, and discuss the other placement options available within a traditional public school setting. (D.I. 24, Part I, Taylor 176).

### The District's January 2006 Proposed IEP

In January 2006, the District developed a new IEP for Quinton to be implemented for the remainder of his fifth grade year (i.e., 2005-2006) and the first half of the sixth grade year (i.e., 2006-2007). The IEP team determined Quinton needs opportunities for direct communication with deaf peers and adults, direct instruction in ASL, staff trained to work with deaf students, and visual access to the environment. (D.I. 9, ¶11; D.I. 11, ¶11). The District felt Quinton should continue in his placement at Delaware School for the Deaf where all of these educational needs could be met. (D.I. 24, Part 1, Mieczkowski, pp. 308-09; 317-18). Alternatively, the District also explained to the Johnsons there were other traditional public

middle schools Quinton could attend within the District where he would be provided a full-time sign language interpreter as a related service under the IDEA. (D.I. 24, Part I, Taylor 176; D.I. 24, Part II, J. Johnson pp. 86, 104). The Johnsons felt none of the public school placements were appropriate for Quinton.

### The Johnsons' Request For An Administrative Due Process Hearing Under The IDEA

On or about April 11, 2006, the Johnsons requested an administrative due process hearing from the Department in accordance with 14 *Del. C.* § 3135. (D.I. 9, ¶12; D.I. 11, ¶12). The Department appointed a three member administrative panel consisting of an attorney admitted to practice in the State of Delaware (i.e., Laraine Ryan), an educator knowledgeable in the field of special education (i.e., William McGlumphy), and a lay person with a demonstrated interest in the education of students with disabilities (i.e., Judith Mellen). See, 14 *Del. C.* § 3137. (D.I. 9, ¶13; D.I. 11, ¶13).

In their complaint, the Johnsons claimed Quinton's needs could not be met in the public school system, and that the January 2006 IEP failed to provide him with FAPE. (D.I. 9, ¶12; D.I. 11, ¶12; D.I. 25, Part V, Ex. 1). As a remedy, the Johnsons requested the Panel to order the District to provide a full-time interpreter at St. Anne's School with public funds. (D.I. 9, ¶12; D.I. 11, ¶12). The Johnsons argued this was a reasonable and cost effective approach because the District already had an obligation to pay for an interpreter if Quinton attended school within the public system.

Before the hearing, the Johnsons retained an attorney and amended their complaint, adding a demand that the District pay for Quinton's private school tuition at St. Anne's Episcopal School. Because the Johnsons sought their son's private school placement at

public expense, the Department voluntarily joined as a party to the proceeding.[2]  (D.I. 25, Part V, Ex. 1).

The Panel conducted the due process hearing on August 1st, 3rd, and 15th, 2006. (D.I. 24-26).  Over the course of three days, the Panel heard testimony from multiple witnesses, including Quinton's teachers, the school psychologist, the District's literacy specialist, District administrators, and the Johnsons.  (D.I. 9, ¶14; D.I. 11, ¶14).  The Panel also received over one hundred of pages of documents into evidence, including Quinton's educational records, IEPs, evaluations, and test results.  All parties were represented by counsel, and at the conclusion of the hearing, the parties submitted written closing briefs in support of their respective positions.

### The Panel's September 20, 2006 Decision

On September 20, 2006, the Panel issued a unanimous decision concluding the District provided Quinton a free appropriate public education in compliance with the IDEA. (D.I. 9, ¶15; D.I. 11, ¶15).  The Panel determined the January 2006 IEP was appropriate, and Quinton made reasonable educational progress at Delaware School for the Deaf, and performed quite well.  (D.I. 26, Part IX, P. 8).  The Panel pointed out there are inherent benefits Quinton would receive at Delaware School for the Deaf because it is a specialized school offering a program and placement tailored to students with the same disability as Quinton.  The Panel found Quinton's educational program and placement at Delaware School for the Deaf provided him with significant learning and would continue to do so if he remained enrolled.  (D.I. 26, Part IX, p. 8).  Because the District provided Quinton a free appropriate public education, the Panel

---

[2]   14 *Del. C.* § 3124 is a state funding statute which outlines the Department's obligation to contribute funds to the costs of a child's private placement when the child is "complex or rare" and cannot benefit from any suitable public program within the State due to the child's disabilities.  Neither the District nor the Department contend Quinton is "complex or rare".  Rather, the administrative proceedings involved a parental placement dispute.  If, however, the Panel had determined Quinton was "complex or rare" and unable to benefit from any public program, the Department could have an obligation to contribute to private school tuition costs under 14 *Del.C.* 3124 and  § 604(c).  Therefore, the Department joined the proceedings to protect its possible exposure and assert its position.

determined the District is not required to pay for his private school education at St. Anne's. Rather, the Panel recognized the decision to place Quinton at St. Anne's School was a unilateral decision made by his parents for which neither the District nor the Department was responsible. (D.I. 9, ¶15; D.I. 11, ¶15; D.I. 26, Part IX, p. 26).

However, despite the Panel's determination the District provided Quinton with FAPE, the Panel proceeded to find that the District should exercise its discretion and provide a sign language interpreter to Quinton while he attends St. Anne's School as a parentally-placed private school student.  (D.I. 26, Part IX, p. 26).  This part of the Panel Decision is legally erroneous, and reversal is warranted.

**ARGUMENT**

I.    **UNDER THE APPLICABLE STANDARD OF REVIEW, THE COURT HAS THE AUTHORITY TO REVERSE A PART OF THE PANEL'S DECISION THAT IS BASED ON LEGAL ERROR.**

When considering an appeal from a special education hearing panel's decision, the Court is required to: (1) receive the record of the administrative proceedings; (2) hear additional evidence at the request of a party; and (3) basing its decision on a preponderance of the evidence, grant relief as the Court determines appropriate. 20 U.S.C. § 1415(i)(2)(C). The standard of review for these types of actions is a modified form of *de novo* review. *S.H. v. State Operated Sch. Dist.,* 336 F.3d 260, 270 (3d Cir. 2003); *Oberti v. Bd. of Educ. of the Borough of Clementon Sch. Dist.,* 995 F.2d 1204, 1219 (3d Cir. 1993). Under this standard, the Court must afford "due weight" to the panel's findings of fact and witness credibility determinations. *Hendrick Hudson Bd. of Educ. v. Rowley,* 458 U.S. 176 (1982); *Susan N. v. Wilson Sch. Dist.,* 70 F.3d 751 (3d Cir. 1995); *W.E.B. v. Appoquinimink Sch. Dist.,*C.A. No. 01-499-SLR, 2003 U.S. Dist. LEXIS 12695, *4 (D. Del. July 8, 2003). The Court must set aside the administrative decision, however, if it finds the party challenging the decision has proved by a preponderance of the evidence the decision was erroneous. *Rowley*, 458 U.S. at 206. The amount of deference to be afforded to the administrative proceedings, if any, is an issue left to the discretion of the Court. *D.R. v. East Brunswick Bd of Educ.,* 109 F.3d 896 (3d Cir. 1997); *Susan N.,* 70 F.3d at 760; *Carlisle Area Sch. v. Scott P.,* 62 F.3d 520, 557 (3d Cir. 1995).

When engaging in judicial review, the Court should examine the thoroughness of the administrative findings and afford them deference only if they are "thoughtful and careful". *Teague Independent Sch. Dist. v. Todd L.,* 999 F.2d 127, 131 (5th Cir 1993) (no deference given to administrative findings where district court's review shows that  law was erroneously applied to the facts). The IDEA does not require the Court to defer to the administrative findings when

12

its own review of the evidence indicates the administrative tribunal erroneously assessed the facts or erroneously applied the law to the facts.  *Teague Independent Sch. Dist.,* 999 F.2d  at 131; *Town of Burlington v. Dept. of Ed.*, 736 F.2d 773, 792 (1ˢᵗ Cir. 1984), *aff'd*, 471 U.S. 359 (1985).

In this case, the District and the Department do not seek a reversal or even judicial review of the Panel's factual findings with respect to the provision of FAPE to Quinton.  In fact, the Panel correctly determined Quinton received an appropriate education in compliance with the IDEA and Chapter 31.  (D.I. 26, Part IX, p. 8, 26).  The Panel properly assessed the evidence and applied the facts to the law by finding Quinton's January 2006 IEP was appropriate and tailored to his educational needs.  Because the District offered Quinton FAPE, the Panel correctly determined the District is not responsible to pay for his private school education.  Rather, the Panel understood the decision to place Quinton at St. Anne's School was a unilateral parental decision for which neither the District nor the Department was responsible.

In this appeal, the District and the Department raise purely a legal issue, and contend that once the Panel concluded the District provided Quinton FAPE, the Panel had no legal authority to then order the District to provide Quinton an interpreter in a private school setting as a related service under the IDEA.  The Panel correctly determined the District is not legally responsible for providing Quinton an interpreter at St. Anne's Episcopal School because he is a parentally-placed private school student under the IDEA.  After making this determination, however, the Panel misapplied the law and exceeded its authority by ordering the District to provide the interpreter anyway.  In the Panel's faulty view, "having the interpreter go to St. Anne's rather than any of the public schools would not cost the District more."  (D.I. 26, Part IX, p. 25).  According to the Panel, it is was an arbitrary exercise of discretion for the

District to refuse to provide the interpreter simply because it is not required by the law.  (Id. at p. 26).  This part of the Panel Decision represents "bad law", and could serve as wide-reaching improper precedent for other districts in the State of Delaware if it is not reversed by the Court. As more fully explained in the sections that follow, the Panel's reasoning and application of the law with respect to the public provision of a hearing interpreter in a private school setting is flawed in many respects, and its reversal is warranted.

## II.    AS A PARENTALLY-PLACED PRIVATE SCHOOL STUDENT, QUINTON HAS NO INDIVIDUAL RIGHT TO RECEIVE SOME OR ALL OF THE SPECIAL EDUCATION AND RELATED SERVICES HE WOULD RECEIVE IF HE ATTENDED A PUBLIC SCHOOL WITHIN THE DISTRICT.

### A.    Students With Disabilities Who Attend School In The Public System Are Entitled To A Wide Array Of Services Under The IDEA.

The IDEA is the central federal statute governing the provision of special education  and related services to students with disabilities primarily attending school within the public system.  It is a funding statute, pursuant to which states accept federal funds in exchange for the states' commitment to provide special education services to students with disabilities in the specific manner required by the IDEA.  As one District Court has described it, "[t]he IDEA allocates federal funding to those states that commit to the provision of a free, appropriate, public education ("FAPE") to children with disabilities."  *Nieuwenhuis by Nieuwenhuis v. Delavan-Darien Sch. Dist. Bd. of Educ.*, 996 F. Supp. 855, 859 (D. Wis. 1998).  Specifically, "[r]ecipient states must erect means for the identification, evaluation, and placement of children with disabilities.  The IDEA dictates certain features of these mechanisms and provides procedural protections for the child as well as administrative and judicial review and remedies in the event these protections are breached." *Id.*

Generally, parents of children with disabilities who chose to take advantage of public education open the door for their children to receive a variety of services and entitlements. For example, students with disabilities enrolled in the public school system are entitled to receive "special education," which is defined as "specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including: (A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in physical education." 20 U.S.C. § 1401(29). Students with disabilities are also entitled to "related services" defined as "transportation, and such developmental, corrective, and other supportive services (including speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and include the early identification and assessment of disabling conditions in children." 20 U.S.C. § 1401(26).

Public school districts must also develop an IEP for each child enrolled in the district identified with a disability and in need of special education. 34 C.F.R. § 300.320; 14 DE Admin Code § 925.20.0. The IEP must be developed collaboratively by an IEP team, including a regular and special education teacher, as well as the child's parents. 34 C.F.R. § 321; 14 DE Admin Code § 925.21.0. The IEP must include a number of provisions, including a statement of the child's present levels of academic achievement, a statement of measurable annual goals, a

description of how the child is progressing to meet the goals, a statement of the special education and related services the child will receive, as well as a description of how the child will be accommodated in the classroom in order to access the instruction. 34 C.F.R. § 300.320; 14 DE Admin Code § 925.20.0.

In addition, the IDEA also provides a number of procedural safeguards and remedies to children with disabilities attending schools within the public system. *See, generally* 34 C.F.R. §§ 300.500- 300.520; 14 DE Admin Code §§ 926.1.0 through 36.0. For example, parents of children with disabilities are entitled to advance written notice before a district proposes to change a child's educational placement. 34 C.F.R. § 300.503; 14 DE Admin Code § 926.30. If parents disagree with a district's evaluation of their child, they have the right to request an independent evaluation be performed at public expense. 34 C.F.R § 300.502; 14 DE Admin Code § 926.2.0. Parents are also entitled to advance notice of any IEP team meeting, and they are required members of their child's IEP team. 34 C.F.R. § 300.322; 14 DE Admin Code § 925.22.0. If parents disagree with the IEP developed for their child, they may request an administrative due process hearing and present evidence to an independent hearing panel to effectuate a change in their child's educational program. 34 C.F.R. §§ 300.507 through 511; 14 DE Admin Code §§ 926.7.0 through 11.0. Parents may also request mediation, or file an administrative complaint with their state department of education to resolve their dispute. 34 C.F.R. §§ 300.151 through 153; 14 DE Admin Code §§ 926.51.0 through 53.0

**B. Students With Disabilities Who Attend Private Schools At The Election Of Their Parents Receive Fewer Services And Entitlements Under The IDEA.**

The IDEA and its implementing regulations describe how public school districts have a different and lesser set of responsibilities to children with disabilities who attend private

16

schools at the election of their parents. *See e.g.*, 20 U.S.C. § 1412(a)(10)(A); 34 C.F.R. §§ 300.130-300.144[3]; s*ee also,* 14 DE Admin Code §§ 923.30 through 47.0. Parentally-placed private school students with disabilities are defined as "children with disabilities enrolled by their parents in private, including religious, schools or facilities that meet the definition of elementary school in Sec. 300.13 or secondary school in Sec. 300.36, other than children with disabilities covered under Sec. 300145 through 300.147." 34 C.F.R. § 300.130.[4], *see also*, 14 DE Admin Code § 923.30. The IDEA "does not require" a school district "to pay for the cost of education including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." 20 U.S.C. § 1412(a)(10)(C)(i).[5] Consistent with this clear statutory language, the IDEA's regulations confirm that "[n]o private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school." 34 C.F.R. § 300.137(a); 14 DE Admin Code § 923.37.1. In this case, there is no dispute Quinton is a parentally-placed private school student.

While public school districts have some obligation to provide services to parentally-placed private school students, the obligation is far more limited than the broad entitlement of services available to children with disabilities who attend public schools. Simply put, the IDEA has a far less extensive, statutory scheme to support the education of parentally-placed private school students with disabilities such as Quinton. The statutory distinction drawn

---

[3] The former 1999 regulations covering the provision of special education and related services to parentally-placed private school students were located at 34 C.F.R. §§ 300.145-300.462 (1999).
[4] See former 34 C.F.R. § 300.450 (1999).
[5] Public funds for parentally selected private educational placements are only available under the IDEA when a school district cannot, or does not, offer a free appropriate public education. *See* 20 U.S.C. § 1401(9); *Burlington*, 471 U.S. at 373-374.

between public school children with disabilities and parentally-placed private school students is sensible given the limited nature of the public funding that is available for education.

Public school districts have two primary responsibilities to parentally-placed private school children. First, school districts must locate, identify, and evaluate all children with disabilities who are enrolled by their parents in private schools located within the district. Commonly referred to as "child find", this process allows families to be made aware of their child's educational needs and the special education services that would be available to them in they chose to enroll their child in a public school and take advantage of public services. *See* 20 U.S.C. § 1412(a)(10)(A)(ii); 34 C.F.R. § 300.131.[6]  In this case, there is no dispute that the District properly identified Quinton as a child in need of special education and related services on the basis of his disability. Indeed, historically, Quinton has always received special education and related services throughout his enrollment in the public school system.

As a second responsibility, public school districts must allocate a proportional share of federal IDEA funds to provide services to parentally-placed private school children. 20 U.S.C. § 1412(a)(10)(A)(i)(I). Districts must provide for the participation of parentally-placed private school students "in the program assisted or carried out under Part B of the Act by providing them with special education and related services…" 34 C.F.R. § 300.132.[7]  The "participation" is funded through a proportional share of the Part B funds which must be spent by public school districts on special education and related services to parentally-placed private school students attending private schools located within the public school district. 34 C.F.R. § 300.133. The amount of the proportional share is determined by comparing the number of disabled students attending private schools in the district to the total number of children with

---

[6] See former 34 C.F.R. § 300.451 (1999).

059265.1028

disabilities being educated in the district. 20 U.S.C. § 1412(1)(10)(A)(i). Because federal funds represent only a small fraction of the amount needed to provide the special education and related services required by IDEA in public schools, the proportional share allocation does not guarantee similar service, or even any service, to any particular child with a disability in a private school. As a result, special education services in private schools "are, not surprisingly, less extensive than the services that a disabled child enrolled in a public school is entitled to receive." *Greenland Sch. Dist.* v. *Amy N.*, 358 F.3d 150, 157 (1st Cir. 2004).

Once the proportional share of funds is determined, districts must consult with representatives of private schools located within their boundaries to determine the types of services that will be provided with the apportioned funds. The IDEA regulations require district officials to engage in "timely and meaningful consultation" with representatives of the private schools located within the public school district to determine how the limited funds will best be spent. 34 C.F.R. § 300.134; 14 DE Admin Code § 923.34.1.

Despite these provisions, parentally-placed private school students still have "[n]o individual right to special education and related services" under the IDEA. 34 C.F.R. § 300.137(a)[8]; 14 DE Admin Code § 923.37.1. Specifically, Section 300.137(a) states that "[n]o parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school." The legislative history of § 300.137(a) is informative and relevant. During the public comment period for the promulgation of § 300.137, one commentator recommended removing § 300.137(a), stating "it is discriminatory and that parentally-placed private school

---

[8] See former 34 C.F.R. § 300.454(a) (1999) ("No private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school.").

children must receive the same amount of services as children with disabilities in public

schools." The Office of Special Education and Rehabilitative Services for the U.S. Department

of Education ("OSERS") disagreed and noted that "Section 300.137(a) *reflects the Department's*

*longstanding policy*, consistent with Section 612(a)(10) of the Act, and explicitly provides that

children with disabilities enrolled in private schools by their parents have no individual

entitlement to receive some or all of the special education and related services they would

receive if enrolled in the public schools." OSERS further stated: "Under the Act, LEAs *only*

*have an obligation to provide parentally-placed private school children with disabilities an*

*opportunity for equitable participation in the services funded with Federal Part B funds that the*

*LEA has determined, after consultation, to make available to its population of parentally-placed*

*private school children with disabilities. LEAs are not required to spend more than the*

*proportional Federal share on those services." See, Comments of Office of Special Education*

*and Rehabilitative Services,* 71 Federal Register, 46695 (August 14, 2006) (emphasis added).

Indeed, Section 300.137(a) must be read in conjunction with Section 300.138(a)(2), which, in

discussing public school districts obligation to provide equitable services to parentally-placed

private school students, states that "[p]arentally-placed private school children with disabilities

may receive a different amount of services than children with disabilities in public schools." 34

C.F.R. § 300.138(a)(2).[9]

       In addition, if the parents of a parentally-placed private school student believe the

district did not engage in meaningful consultation with private school representatives or

otherwise provide equitable services to their child, the parents have no private right of action to

enforce their claim. Parents may not use the due process procedures to present a claim the

---

[9] See former 34 C.F.R. § 300.455(a)(2),(3) (1999).

district has failed to engage in meaningful consultation with private school officials.  34 C.F.R. §

300.140(a).[10]  Instead, private school officials must file an administrative complaint with the

state department of education (i.e., SEA).  34 C.F.R. § 300.136 (private school officials have the

right to submit administrative complaints to SEAs alleging that public school districts have failed

to engage in meaningful and timely consultation or failed to give due consideration to the views

of private school officials).  If the private school officials are then dissatisfied by the disposition

of their administrative complaint by the SEA, they must submit a complaint to the U.S. Secretary

of Education.  *Id.*

     C.     **Numerous Federal Courts Have Applied These Provisions Of
The IDEA, Consistently Finding Districts Owe Limited Duties
To Parentally-Placed Private School Students.**

Routinely, courts have held if a public school district makes a free appropriate

public education available to a student, and the parents voluntarily place the student in a private

school, the public school district is not required to pay for the cost of the child's education,

including any special education and related services.  *N.M. v. Sch. Bd. of Miami-Dade*, 437 F.3d

1085, 1096 (11th Cir. 2006); *Fowler ex rel. Fowler v. Unified Sch. Dist. No. 259*, 128 F.3d 1431,

1436-37 (10th Cir. 1997);  *Gary S. v. Manchester School Dist.,* 241 F. Supp. 2d 111, 115

(D.N.H. 2003)  ("[A] disabled student in private school does not have an individually

enforceable right to receive special education and related services" under IDEA); *John T. v.

Delaware County Intermediate Unit,* No. CIV. A. 98-5781, 2000 U.S. Dist. LEXIS 6169 (E.D.

Pa. May 8, 2000) ("IDEA alone does not require a state to fund special educational needs in a

nonpublic setting if there is a suitable public school setting available that the parents have

voluntarily rejected."); 34 C.F.R. § 300.101 (public school districts must make a FAPE

---

[10] See former 34 C.F.R. § 300.457 (1999).

    

"available to all children residing in the district…"); 34 C.F.R. § 300.137(a).  A school district must only provide a student an opportunity for participation; once a genuine opportunity has been offered for participation and refused, the district's obligation is discharged. *Nieuwenhuis by Nieuwenhuis v. Delavan-Darien Sch. Dist. Bd. of Educ.*, 996 F. Supp. 855, 866 (E.D. Wis. 1998) (FAPE was provided, so student was denied provision of ASL interpreter at private sectarian high school).  As the *Nieuwenhuis* court noted, "once a 'public school makes available the necessary service at a public institution, giving the disabled student a genuine opportunity to participate, and nothing in the record indicates that it has otherwise abused its discretion, the public school has discharged its obligation.'"  996 F. Supp. at 866 (quoting, *K.R. v. Anderson Community Sch. Corp. ("K.R. I")*, 81 F.3d 673 (7th Cir 1996), *vacated for reconsideration in light of IDEA amendments of 1997*, 117 S. Ct. 2502 (1997)).

Federal courts have also consistently recognized that parentally-placed private school students have "no individual right under IDEA to [specific] special education and related services." *John T. v. Marion Ind. Sch. Dist.*, 173 F.3d 684, 691 (8th Cir. 1999); *see also* 34 C.F.R. § 300.137(a); 34 C.F.R. § 300.138.  Additionally, the IDEA does not require a public school district to provide any services on-site to disabled students enrolled in private school.  *Bay Shore Union Free Sch. Dist. v. T.*, 405 F. Supp. 2d 230, 241 (E.D.N.Y. 2005), *rev'd on other grounds*, 2007 U.S. App. LEXIS 11013 (2d Cir. May 10, 2007) (collecting cases); *Cefalu v. East Baton Rouge Parish Sch. Bd.,* 117 F.3d 231, 233 (5th Cir. 1997) ("We therefore hold unambiguously that the defendants were not legally obligated to provide an on-site sign language interpreter to the plaintiff at the private school.").  Instead, as discussed *supra,* the IDEA only

requires that private school children collectively receive a proportionate amount of a state's federal funding. [11]

> As explained by the court in *Nieuwenhuis*:
>
> The IDEA recognizes three types of placement scenarios for disabled students: The first is where the disabled student is provided needed services at and attends a public school. The second, involves the student whose IEP placement offer places him in a private school. For these two groups of students, the IDEA requires the provision of a FAPE that includes public funding of all special education and related services. With regard to the third group of students, those placed in private schools voluntarily, the IDEA, prior to the 1997 Amendments, required that school districts provide "for the participation of such children in the program assisted or carried out under this part by providing for such children special education and related services."

996 F. Supp. at 865 (internal citations omitted) (quoting former 20 U.S.C. § 1413(a)(4)(A) (1997)).  The *Nieuwenhuis* court determined that the 1997 Amendments to IDEA clarified the obligations of public school districts to provide services to parentally-placed private school students, noting that, "[t]aken as a whole, the regulatory scheme reflects the fact that under the IDEA, when the parent of an eligible child opts out of a public school where a FAPE could be provided, that parent is opting for a lesser entitlement." *Id.* at 866.

The recent case of *Bay Shore Union Free Sch. Dist.* contains an instructive overview of the judicial precedent on the obligations of public school districts to provide special education and related services to parentally-placed private school students.  There, the court noted that  "[b]inding precedent from the Court of Appeals for the Second Circuit, persuasive authority from other circuits, the language of IDEA itself and that of its enforcing regulations all lead to the same conclusion: federal law does not compel the school district to provide [the

---

[11] As discussed above, under 34 C.F.R. § 300.133, private school children, in total, receive a portion of the LEA's total IDEA funding corresponding to the proportion of all the IDEA eligible students that are parentally-placed in private schools.

student] a one-to-one aide at his private school," because the student, as a parentally-placed

private school student, had no legal entitlement to receive the services he would have been

entitled to had he been enrolled in the public schools. *Bay Shore Union Free Sch. Dist.*, 405 F.

Supp. 2d at 242. Although the law does not expressly prohibit districts from providing such

services to parentally-placed private school students, "permission is not compulsion." *Id.* While

the Second Circuit Court of Appeals ultimately vacated the decision of the District Court on

jurisdictional grounds, its analysis of the case law in this area remains instructive and

demonstrates the limited obligations of public school districts to provide services to parentally-

placed private school students.

> **D.** **The District Engaged In Meaningful Consultation With**
> **Private School Officials And Determined The Most Prevalent**
> **Area Of Need Among Parentally-Placed Private School**
> **Children Is Articulation Of Speech Requiring The Limited**
> **Amount of Apportioned Funds To Be Used For Speech And**
> **Language Services.**

Consistent with its obligations under the IDEA, the District determines the

specific service(s) on which the proportional share of the Part B funds will be spent on

parentally- placed private school students through meaningful consultation with representatives

of the five (5) private schools located within the District. See Affidavit of Mary Ann

Mieczkowski, Exhibit 1. The purpose of the meaningful consultation is to determine, in a

reasoned and calculated manner, the area, or areas, of greatest need. The District attempts to

leverage the limited amount of funds available for parentally-placed private school children by

identifying the most prevalent educational need among them. *Id.*

For the 2006-2007 school year, the meaningful consultation with representatives

of private schools located within the District took place at a meeting on September 7, 2006

among representatives of various public school districts located in New Castle County,

Delaware, and private school representatives (hereinafter, "the county-wide meeting").

Affidavit of Mary Ann Mieczkowski, Exhibit 1. Prior to the meeting, the District provided

representatives of the private schools located within its boundaries a survey form seeking

information about the services needed by parentally-placed private school children with

disabilities. The survey responses and the meaningful consultation with the representatives of

the private schools located within the District that occurred at the county-wide meeting identified

articulation of speech as the area of greatest need among the parentally-placed private school

students attending private schools within the District's boundaries. *Id.* As a result, the District

determined to use the apportioned funds to provide speech and language services to its

parentally-placed private school children during the 2006-2007 school year. *Id.*

It is important to note that the District's proportional share of the federal Part B

funds is extremely limited. For the 2006-2007 school year, the amount of the proportional share

of the Part B funds allocated to the District for private school services was merely $3,639.00. *Id.*

In contrast, the District paid the approximate sum of $37,602.72 for the costs of Quinton's full-

time sign language interpreter at St. Anne's Episcopal School during the 2006-2007 school year.

The District continues to pay the cost of Quinton's hearing interpreter for the 2007-2008 school

year. Thus, it is apparent the cost of Quinton's sign language interpreter greatly exceeds the

proportional share of the limited federal Part B funds available to the District to provide special

education and related services to *all* parentally-placed private school children attending private

schools within the District's boundaries. These facts only underscore the importance of

reversing the Panel's decision with respect to its directive the District provide an interpreter for

Quinton at St. Anne's Episcopal School.

**E.** **The Panel Committed Legal Error In Holding The District Abused Its Discretion In Refusing To Publicly Fund An Interpreter As A Related Service For Quinton At St. Anne's Episcopal School.**

As mentioned, the Panel incorrectly determined the District abused its discretion when it refused to provide a publicly-funded sign language interpreter for Quinton at St. Anne's Episcopal School. This aspect of the Panel's decision is clear legal error for a variety of reasons.

First, the Panel correctly concluded that the District had made a FAPE available to Quinton. Indeed, the Panel specifically found that the District's program had provided Quinton "with significant learning and could continue to do so." (D.I. 26, Part IX, p. 8). Therefore, the Panel specifically found that the Johnsons decision to enroll Quinton at St. Anne's Episcopal School "is a unilateral placement." (Id. at p. 26). Thus, Quinton is a parentally-placed private school student as that term is defined in 34 C.F.R. § 300.130, and his educational rights, entitlements, and procedural safeguards, are set forth in 20 U.S.C. § 1412(a)(10)(A) and 34 C.F.R. §§ 300.130-300.144. However, despite this fact, the Panel concluded that "[i]n the rational exercise of discretion, [the District] should provide a sign-language interpreter as a related service, *and that liability continues over the parents' unilateral placement.*" (D.I. 26, Part IX, p. 26). (emphasis added).

The Panel's determination that Quinton should receive a sign language interpreter as a related service under the IDEA despite his status as a parentally-placed private school student ignores the specific language of 20 U.S.C. § 1412(a)(10)(C)(i), which provides that public school districts have no obligation "to pay for the cost of education, *including special education and related services,* of a child with a disability at a private school or facility *if* [the public school district] *made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility*." (emphasis added). The

Panel's decision also ignores 34 C.F.R. § 300.137, which provides that "[n]o parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school." Furthermore, the Panel's decision is contrary to the numerous federal courts discussed *supra* that have addressed this issue.

Simply put, having found that the District made FAPE available to Quinton, and that he was a parentally-placed private school student, the Panel lacked the authority to order the District to provide an interpreter as a related service in the private school setting. Indeed, the Panel lacked the authority to even consider the issue of the provision of services to a parentally-placed private school student because such disputes concerning the provision of services are not subject to due process procedures. 34 C.F.R. § 300.140(a).

Setting this jurisdictional issue aside, it is clear under the law that Quinton has no individual entitlement to receive some or all of the special education and related services that he would have received had his parents chosen to continue his enrollment in the public school system. Under these facts, the District's decision not to provide a sign language interpreter at St. Anne's School was not an abuse of discretion, especially since the cost of Quinton's hearing interpreter is more than ten times the proportional share of Part B funds available to all of the District's parentally-placed private school students.

## CONCLUSION

The language of the IDEA and federal and state regulations, as well as persuasive authority from other courts, demonstrates that the IDEA does not compel the District to provide Quinton with an interpreter as a related service at his private school.  The District's refusal to publicly fund a sign language interpreter for Quinton at St. Anne's Episcopal School was not an abuse of discretion.  Therefore, for the foregoing reasons and authorities cited herein, summary judgment must be granted to the Plaintiffs on all the claims raised in  their Complaint requesting judicial review.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Michael P. Stafford, Esquire
_____
Scott A. Holt, Esquire (No. 3399)
Michael P. Stafford, Esquire (No. 4461)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware  19899-0391
Telephone:  (302) 571-6623; 571-6553
Facsimile:  (302) 576-3299; 576-3461
Email: sholt@ycst.com; mstafford@ycst.com
*Attorneys for Plaintiff Appoquinimink Sch. Dist.*

Dated:   December 10, 2007

DEPARTMENT OF JUSTICE

/s/ Jennifer L. Kline, Esquire
_____
Jennifer L. Kline, Esquire (Bar ID 4075)
102 West Water Street
Dover, DE 19901
Telephone:  (302) 739-7641
Jennifer.kline@state.de.us
*Attorney for the Delaware Department of Education and the Secretary of Education, Valerie A. Woodruff*

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE BOARD OF EDUCATION OF THE APPOQUINIMINK SCHOOL DISTRICT, and THE DELAWARE DEPARTMENT OF EDUCATION, | : : : : : | |
| Plaintiffs, Counterclaim Defendants, and | : : : | C.A. No. 06-770-JJF |
| VALERIE WOODRUFF, SECRETARY OF EDUCATION FOR THE STATE OF DELAWARE, | : : : : | |
| Counterclaim Defendant, | : : | |
| v. | : : | |
| MR. & MRS. SQJ, IV, parents of SQJ, V, | : : : | |
| Defendants, and | : : | |
| MR. & MRS. SQJ, IV individually and on behalf of their son, SQJ, V, | : : : | |
| Counterclaim Plaintiffs. | : | |

AFFIDAVIT OF MARY ANN MIECZKOWSKI

STATE OF DELAWARE        )
                        )        SS.
NEW CASTLE COUNTY        )

BE IT REMEMBERED, that on this 10th day of December, 2007, personally

appeared before me, a Notary Public for the State and County aforesaid, the deponent, Mary Ann

Mieczkowski, who deposed and stated as follows:

      1.     I am the Supervisor of Special Education Services for the Appoquinimink

School District.   I have held this position since August, 2002.

2.      As Supervisor of Special Education Services, my duties and responsibilities include ensuring the District's compliance with all applicable state and federal special education laws and regulations and ensuring that each student with disabilities enrolled in the District receives a free appropriate public education ("FAPE").

3.      The District has no obligation to ensure that students attending private schools located within the District receive a FAPE, or receive some, or all, of the special education and related services that they would receive in the public schools.

4.      The District is obligated to conduct "child find" for students attending private schools located within the District.  "Child find" refers to the process of identifying and evaluating any child who may be disabled and in need of special education to determine their eligibility.

5.      The District is also obligated to spend a proportional share of the federal Part B funding it receives on services for identified students eligible for special education and related services attending private schools, at their parents choice, located within the District's boundaries.

6.      The proportional share of the Part B funds is calculated annually by the Delaware Department of Education based on the December 1 count.

7.      The District determines the specific service(s) on which the proportional share of the Part B funds will be spent on parentally place private school students through meaningful consultation with representatives of the private schools located within the District. The purpose of the meaningful consultation is to determine, in a reasoned and calculated manner, the area, or areas, of greatest need.  The District attempts to leverage the limited amount of

funds available for parentally placed private school children by identifying the most prevalent educational need among them.

8.    Approximately 5 private schools are located within the District.  These schools are the Bethesda Child Development Center, the Cornerstone Child Care and Youth Center, the Glasgow Christian Academy, St. Andrew's School, and St. Anne's Episcopal School.

9.    For the 2006-2007 school year, the meaningful consultation with representatives of private schools located  within the District took place at a meeting between representatives of various public school district's located in New Castle County, Delaware, and private school representatives on September 7, 2006.

10.    Prior to the meeting, the District sent a letter to private schools located within the District inviting them to attend the meeting.  A copy of the invitation letter is attached hereto as Exhibit A.

11.    The District also mailed representatives of the private schools located within the District a survey form seeking information about the services needed by parentally place private school children with disabilities.  A copy of the survey form is attached hereto as Exhibit B.

12.    The survey responses and the meaningful consultation with the representatives of the private schools located within the District that occurred at the September 7, 2006 county-wide meeting identified articulation of speech as the area of greatest need.

13.    Thus, the related service provided by the District during the 2006-2007 school year to parentally-placed private school children within the District was speech and language services.

14.     The amount of the proportional share of the Part B funds allocated to the District for private school services during the 2006-2007 school year was $3,639.00.

15.     The District paid/reimbursed the Defendants approximately $37,602.72 for the costs of the interpreter working with SQJ, V at St. Anne's Episcopal School during the 2006-2007 school year.   The District continues to pay/reimburse the costs associated with the interpreter at the present time.

_Mary Ann Mieczkowski_
Mary Ann Mieczkowski

SWORN TO AND SUBSCRIBED before me, a Notary Public, the day and year aforesaid.

_____ (SEAL)
Notary Public
My Commission Expires: _4/2/11_

Donna M. Santangelo
Notary Public, State of Delaware
My Commission Expires April 2, 2011

# EXHIBIT A



# Appoquinimink School District

August 3, 2006

Dear Administrator:

*We hope this letter finds you well rested and ready to begin the 2006-07 school year!*

In light of the reauthorization of the Individuals with Disabilities Education Act (IDEA) and the many changes, we would like to invite you to attend a New Castle County meeting of representatives from private and parochial schools, as well as personnel representing New Castle County School Districts.

Martha Toomey, Director of Early Childhood & Exceptional Group at the Department of Education, has agreed to present changes made at the federal level regarding the school district's responsibilities to private and parochial schools. In addition, there will be an opportunity for us to meet together to address your questions and concerns.

Meeting details are as follows:

| | |
|---|---|
| Location: | Bear Library – Community #2 |
| Date: | Thursday, September 7, 2006 |
| Time: | 4:00 – 6:00 p.m.<br>Light refreshments will be provided. |

*Please feel free to invite two additional staff members to accompany you.

Please fill out the attached form and return it to Barbara, in the enclosed envelope, **no later than Wednesday, August 30, 2006.** We look forward to this opportunity to assist you in supporting your students. If you have any questions or concerns, please do not hesitate to call Barbara at (302) 376-4282.

Sincerely,

Mary Ann Mieczkowski
Mary Ann Mieczkowski
Supervisor of Special Education Services

Barbara Mazza
Barbara Mazza
Child Find Coordinator

**Superintendent**
Dr. Tony Marchio

**Board of Education**
Mr. Bill Hutchison
*President*
Mrs. Joanne Christian
*Vice President*
Mrs. Edna Cale
Mr. Edward Czerwinski
Mr. Kevin Hensley

**District Office**
118 South Sixth Street
P.O. Box 4010
Odessa, DE 19730-4010
302.376.4128 Phone
302.378.5016 Fax

**Appoquinimink
Early Childhood Center**
502 South Broad Street
Middletown, DE 19709
302.376.4400 Phone
302.378.5696 Fax

**Brick Mill Elementary**
378 Brick Mill Road
Middletown, DE 19709
302.378.5288 Phone
302.378.5299 Fax

**Cedar Lane
Early Childhood Center**
1221 Cedar Lane Road
Middletown, DE 19709
302.449.5873 Phone
302.449.5877 Fax

**Cedar Lane Elementary**
1259 Cedar Lane Road
Middletown, DE 19709
302.378.5045 Phone
302.378.5091 Fax

**Olive B. Loss Elementary**
200 Brennan Boulevard
Bear, DE 19701
302.832.1343 Phone
302.832.3213 Fax

**Silver Lake Elementary**
200 E. Cochran Street
Middletown, DE 19709
302.378.5023 Phone
302.378.5092 Fax

**Townsend Elementary**
P.O. Box 369
126 Main Street
Townsend, DE 19734
302.378.5020 Phone
302.378.5088 Fax

**Louis L. Redding Middle**
201 New Street
Middletown, DE 19709
302.378.5030 Phone
302.378.5080 Fax

**Everett Meredith Middle**
504 South Broad Street
Middletown, DE 19709
302.378.5001 Phone
302.378.5008 Fax

**Middletown High**
120 Silver Lake Road
Middletown, DE 19709
302.376.4141 Phone
302.378.5268 Fax

An Equal Opportunity Employer

# EXHIBIT B



# APPOQUINIMINK SCHOOL DISTRICT
**118 South Sixth Street, Box 4010**
Odessa, Delaware   19730
Telephone:  (302) 376-4130
Fax:  (302) 378-5263

## Private and Religious School Survey
## Services for Parentally Placed Private School Children with Special Needs

Please rank the following services in terms of your needs and the needs of students with disabilities attending your school, 1 being the more important and 3 being the least important.

_____ Consultation with classroom teachers regarding students with identified learning
   needs.
_____ Selected training offered through the school district
_____ Direct services such as Speech and Language Therapy Services (Consultation,
   Group, or Individual services)
_____ Other (specify) _____
   _____
   _____

Would you like to meet regarding Child Find or types of services/how services will be delivered?
_____ Yes            _____ No

The best time of day to meet is: _____

Questions/Comments:
_____
_____
_____

School:              _____
School Contact:      _____
Phone #:             _____
Fax #:               _____

_____          _____
               Signature                              Date

/bjm081406