IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

THE BOARD OF EDUCATION OF THE          :
APPOQUINIMINK SCHOOL DISTRICT, and     :
THE DELAWARE DEPARTMENT OF             :
EDUCATION,                             :
                                       :
            Plaintiffs,                :
                                       :
      v.                               :   Civil Action No. 06-770-JJF
                                       :
JULIE JOHNSON AND SAMUEL QUINTON       :
JOHNSON IV, parents of SQJ, V,         :
                                       :
            Defendants.                :

Scott A. Holt, Esquire and Michael P. Stafford, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.
Attorneys for Plaintiff, the Board of Education of the Appoquinimink School District.

Jennifer L. Kline, Esquire of THE DEPARTMENT OF JUSTICE OF THE STATE OF DELAWARE, Dover, Delaware.
Attorney for the Delaware Department of Education and the Secretary of Education, Valerie A. Woodruff.

Wayne D. Steedman, Esquire of CALLEGARY & STEEDMAN, P.A., Baltimore, Maryland.
Bruce L. Hudson, Esquire of LAW OFFICE OF BRUCE L. HUDSON, ESQUIRE, Wilmington, Delaware.
Attorneys for Defendants.

**MEMORANDUM OPINION**

April 15, 2008
Wilmington, Delaware.

Farnan, District Judge.

Pending before the Court is a Joint Motion For Summary Judgment (D.I. 30) filed by Plaintiffs, the Board of Education of the Appoquinimink School District (the "District") and the Delaware Department of Education (the "Department") (collectively, "Plaintiffs"). For the reasons discussed, the Department will be dismissed from this action, and the District's Motion For Summary Judgment will be granted in all other respects.

## BACKGROUND

This action was brought by Plaintiffs pursuant to 20 U.S.C. § 1415(i)(2)-(3). Plaintiffs seek judicial review of an administrative hearing decision rendered by the Administrative Hearing Panel (the "Panel") in connection with a complaint filed by Defendants that alleged their minor son's educational needs were not being met in the public school system, and therefore, he should be placed in a private school at public expense, specifically, St. Anne's Episcopal School (St. Anne's). Defendants' son (the "student") is a twelve year old deaf child who is eligible to receive special education and related services under the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. and 14 Del. C. § 3101 et seq.

The student attended the Delaware School for the Deaf ("DSD") since he was approximately 16 months old. Each year, an

1

educational team, in consultation with the student's teachers and parents, developed an Individualized Education Program ("IEP") tailored to meet the student's educational needs. During his fifth grade year, Defendants expressed concern about their son's continued placement at the DSD, due to his below grade level performances on certain examinations. As a result of this concern, Defendants requested that their son be mainstreamed into general education classes with the assistance of an American Sign Language ("ASL") interpreter. Defendants expressly requested that the student be enrolled at St. Anne's and be provided an ASL interpreter on a full-time basis. The ASL interpreter would enable the student to communicate with other students and teachers at St. Anne's, which is not a specialized school for the deaf. The District responded that it would only provide an ASL interpreter for the student if he was enrolled in a public school in the District.

    Defendants then filed a request for a Due Process Hearing before the Panel asserting that the student's most recent IEP required small class sizes at or above his academic ability. Defendants further alleged that the public school could not satisfy this requirement, because the general education classes at the public school were too large and smaller classes only contained students working below the student's grade level. Defendants argued that St. Anne's could meet the student's IEP

requirements, and that an ASL interpreter should be provided to the student, because the District already had an obligation to provide him with an interpreter if he attended a public school within the District.

An evidentiary hearing was held and the Panel issued a decision on September 20, 2006, finding that the District complied with the IDEA by providing the student with a free appropriate public education ("FAPE"), and therefore, the District had no obligation to fund the student's private placement at St. Anne's. However, the Panel also concluded that the District failed to properly exercise its discretion when it declined to provide the student with a full-time sign language interpreter at public expense, while he attends St. Anne's as a parentally-placed private school student. It is the second ruling that is being challenged by Plaintiffs in this action.[1]

## STANDARD OF REVIEW

The procedure for reviewing a state administrative panel's decision in an IDEA case differs from the typical standard of review applied in summary judgment proceedings. In an IDEA case, the Court applies a "modified de novo review" to the decision of

---

[1] Defendants did not appeal the Panel's finding that the student received a FAPE; however, they initially filed counterclaims in this action alleging violations of 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act, the Americans with Disabilities Act and the IDEA. Those counterclaims have since been dismissed with prejudice.

the state administrative panel. L.E. v. Ramsey Bd. of Educ., 435 F.3d 384, 389 (3d Cir. 2006). Under this standard, the Court exercises plenary review over the legal conclusions of the administrative panel, but must give "due weight" to its factual findings. Shore Regional High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d Cir. 2004); Carlisle Area Sch. Dist. v. Scott P., 62 F.3d 520, 528 n.3 (3d Cir. 1995). More specifically, factual findings of the administrative panel are considered prima facie correct, and the Court is required to defer to those factual findings, unless contrary non-testimonial extrinsic evidence exists in the record. Shore Regional, 381 F.3d at 199. The credibility determinations of the administrative panel are also entitled to special weight. Id. In this regard, the review of factual findings and credibility determinations resembles the "clearly erroneous" standard of review. Id. Ultimately, the Court has the discretion to determine how much deference to give to the administrative proceeding, but if the Court departs from the administrative panel's legal or factual rulings, it must provide an explanation for its departure. Carlisle, 52 F.3d at 527.

**DISCUSSION**

I.  <u>Whether The Court Has Subject Matter Jurisdiction To Hear Plaintiffs' Appeal</u>

In response to Plaintiffs' summary judgment motion, Defendants raise, as a threshold matter, the issue of whether the

Court has subject matter jurisdiction over Plaintiffs' appeal.[2] Defendants contend that the Panel's decision regarding the provision of an ASL interpreter was based on state law, and therefore, the Court lacks federal question jurisdiction over this matter.

Plaintiffs contend that the Panel's decision is not based on state law, but rather, on the applicable provisions of the IDEA and the relevant federal case law. Plaintiffs contend that there is nothing in the Panel's decision which demonstrates that its decision was based on state law. According to Plaintiffs, the Panel only refers to Delaware law to express its view that Delaware law is consistent with its interpretation of the IDEA. In addition, Plaintiffs point out that Defendants admitted that the Court had jurisdiction in their Answer to the Complaint.

It is well-settled that an admission or consent to jurisdiction is insufficient to vest a federal court with proper subject matter jurisdiction over a plaintiff's claims. Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982) (holding that "no action of the parties can confer subject-matter jurisdiction upon a federal court," and therefore, consent of the parties and principles of estoppel or

---

[2] An additional jurisdictional issue concerning the Panel's authority to adjudicate the issue of related services to a parentally-placed private school student is discussed infra n.5, as an alternative holding entitling the District to summary judgment.

5

waiver are irrelevant). Rather, the court is obligated to independently assure itself of subject matter jurisdiction over an action. Where subject matter jurisdiction is at issue, the plaintiff bears the burden of establishing that jurisdiction exists.

For purposes of subject matter jurisdiction, "'[a] case arises under federal law . . . if a well-pleaded complaint establishes that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Bay Shore Union Free School Dist. v. Kain, 485 F.3d 730, 734-735 (2d Cir. 2007) (quoting Empire Healthchoice Assur. v. McVeigh, 126 S. Ct. 2121, 2131 (2006)). The IDEA contains a broad jurisdictional provision granting federal courts jurisdiction over actions brought pursuant to its statutory framework without regard to the amount in controversy. 20 U.S.C. § 1439(a)(1). However, the Supreme Court has recognized that a federal cause of action created by a federal statute does not confer federal question jurisdiction if the claims presented turn entirely on state law and diversity of citizenship is not present. Bay Shore, 485 F.3d at 735 (quoting and discussing Shoshone Mining Co. v. Rutter, 177 U.S. 505, 513 (1900)).

Pointing to a section of the Panel's decision captioned "State Law," Defendants contend that the Panel's decision

regarding the provision of an ALS interpreter rests exclusively on 14 Del. C. § 3122.  In the Court's view, however, a full reading of the Panel's decision demonstrates that its holding rests on the provisions of the IDEA, and state law is mentioned only collaterally and in the context of concluding that state law is not contrary to the Panel's position.  Indeed, of the sixteen pages of the Panel's decision pertaining to the issue of "related services" only four paragraphs, totaling less than one page, are devoted to state law, with the remaining pages dedicated to an explanation of the IDEA provisions and related federal case law. (D.I. 2, Exh. A at 25-26.)

However, the Court does not base its conclusion only on the volume of text dedicated to the Panel's exploration of this issue.  Rather, it is evident from the substance and content of the state law section of the Panel's decision that Delaware law provided little, if any, guidance to the Panel, let alone a significant basis for the Panel to rest its decision upon.  In this regard, the Panel expressly recognized that "[w]hile other states have statutes dealing with the question of providing related services to private school students (often merely re-iterating the federal regulations), the Delaware statute does not deal with the subject of related services separately."  (Id. at 25.)  The Panel went on to quote 14 Del. C. § 1322 and note that it "mention[s]" related services (id.), but the Panel

7

acknowledged that the statue is essentially one that involves locating a child for whom related services are needed (id. at 26), or as Plaintiffs describe it, the statute is a "child find" statute.  The Panel went on to further acknowledge that "[t]he Delaware statute does not contain much guidance, but . . . [t]here is at least an indication of a requirement that the reason for not providing related service be inquired into, indicating some need to exercise the discretion with reasoning factors, not just an arbitrary decision with no underlying basis."  (Id.)

    Defendants direct the Court to the Bay Shore decision rendered by the Court of Appeals for the Second Circuit.  485 F.3d at 733-735.  In Bay Shore, the Second Circuit concluded that jurisdiction did not exist over an appeal concerning the provision of a one-to-one educational aide to a parentally-placed private school student, because the school district's lawsuit did not turn on the interpretation of federal law, but rather on the application of state law.  In this regard, the Second Circuit acknowledged that states may set higher standards to guarantee a higher level of entitlement to disabled students (id. at 733), and it was clear that the review officer invoked the state ground in his decision stating that "[i]n contrast to the IDEA, New York law does confer an individual entitlement to special education services and programs to eligible students enrolled by their

8

parents in non-public schools." (Id.)  In contrast, the Panel here made no mention that Delaware law provides any higher standard regarding the eligibility of parentally-placed students for related services, and additionally, the Panel expressly noted that Delaware law is essentially silent on the issue of related services. (D.I., Ex. A at 25.)  Moreover, to the extent the Second Circuit has concluded that federal jurisdiction does not exist over alleged violations of state regulations providing for higher standards than those imposed by the IDEA, the Court notes that the Third Circuit has suggested otherwise. Stephen C. v. Radnor Twp. Sch. Dist., 202 F.3d 642, 647 (3d Cir. 2000) (stating that "[f]ederal law incorporates state standards, and a school district may violate the IDEA if it fails to satisfy the more stringent state law requirements") (internal quotations and citations omitted); William D. v. Mahheim Twp. Sch. Dist., 2007 WL 2825723, *4 & n.8 (E.D. Pa. Sept. 27, 2007) (recognizing distinction between approaches taken by the Second Circuit in Bay Shore and the Third Circuit in Radnor).  Accordingly, the Court concludes that federal subject matter jurisdiction exists over Plaintiffs' claims.

II.  Whether The Department Has Standing To Maintain This Action

    Defendants also challenge the Department's standing to maintain this action.  Specifically, Defendants contend that the Department is not a "party aggrieved by the findings and

9

decision" of the Panel, because the Panel's ruling was that the District should provide an ASL interpreter. Because the Department would not be funding the Panel's recommendation and the counterclaim involving the Department was dismissed, Defendants contend that the Department should be dismissed from this action.

In response, the Department contends that Defendants, in their Answer to the Complaint, conceded that the Department was an "aggrieved party" pursuant to 20 U.S.C. § 1415(i)(2)(A). Thus, the Department contends that Defendants failed to timely raise, and have therefore waived, their lack of standing argument.

The Department has not cited any cases supporting its contention that Defendants waived their lack of standing argument by admitting the Department was an aggrieved party in their Answer to the Complaint. In fact, the Supreme Court has expressly held that standing cannot be waived.[3] See e.g., United States v. Hays, 515 U.S. 737, 742 (1995) ("The question of standing is not subject to waiver . . . ."); National Org. for

---

[3] Courts have made a distinction between constitutional standing and prudential standing suggesting, in some cases, that prudential standing may be waived. UPS Worldwide Forwarding, Inc. v. U.S. Postal Service, 66 F.3d 621, 626 n.6 (3d Cir. 1995) (collecting and discussing cases regarding waiver of prudential standing). The Third Circuit has not squarely addressed this issue as it applies to prudential standing (id.), but in this case, constitutional standing is implicated, and therefore, the Court concludes that waiver principles are inapplicable.

Women, Inc. v. Scheidler, 510 U.S. 249, 255 (1994) ("Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation."). The burden of establishing standing rests on the party seeking to invoke the jurisdiction of the Court. City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 (1983).

To demonstrate standing, a plaintiff must demonstrate that a case or controversy exists within the meaning of Article III of the Constitution. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). To meet this requirement, a plaintiff must show (1) that it suffered an injury-in-fact, (2) the injury is fairly traceable to the action challenged, and (3) it is likely that the injury will be redressed by a favorable decision. Id. at 560-561.

In this case, the Court concludes that the Department has not met its burden with regard to the elements of Article III standing. The Department has not provided any showing on the elements of standing, and instead, rests its argument solely on a theory of waiver by admission, which is unsupported by the case law. Further, the Court concludes that the Department cannot satisfy the injury-in-fact requirement of Article III standing because the Panel's decision is directed to the District, and it is the District and not the Department that would be required to pay for the ASL interpreter. To the extent that the Department

asserts in its Opening Brief that the Panel's decision "represents 'bad law,' and could serve as wide-reaching improper precedent for other districts in the State of Delaware if it is not reversed by the Court" (D.I. 30 at 14), the Court concludes that this potential impact is insufficient to constitute the actual or imminent, or concrete or particularized harm to the Department that is required to establish constitutional standing. <u>Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc.</u>, 528 U.S. 167, 169 (2000). Absent some showing by the District that the Article III standing requirements are met, the Court concludes that the Department lacks standing to pursue this action.

III. <u>Whether The Panel Erred In Concluding That The District Abused Its Discretion By Refusing To Provide The Student With A Full-Time ASL Interpreter, As A Parentally-Placed Private School Student</u>

The IDEA does not "require a local education agency to pay for the cost of education, including special education and related services, of a child with a disability at a private school or facility if that agency made a free appropriate public education available to the child and the parents elected to place the child in such private school or facility." 20 U.S.C. § 1412(a)(10)(C)(i). In its decision, the Panel acknowledged this principle but went on to note that the District is not prohibited from providing related services to a parentally-placed private school student, and may do so in the exercise of its discretion.

The Panel then concluded that the District's decision to deny a one-to-one interpreter for the student was an abuse of discretion. Specifically, the Panel held that "[i]n the rational exercise of discretion, [the District] should provide a sign-language interpreter as a related service, and liability continues over the parents' unilateral placement." (D.I. 2, Exh. A at 26).

Reviewing the Panel's decision in light of the statutory framework of the IDEA and the relevant federal case law, the Court concludes that the Panel's decision is erroneous as a matter of law. Where, as here, the District has provided the child with a FAPE and the parents elect to place the child in private school, no liability continues on the part of the District for the payment of that child's cost of education, including special education and related services. 20 U.S.C. § 1412(a)(10)(C)(i). As further explained by 34 C.F.R. § 300.137, "[n]o parentally-placed private school child with a disability has an individual right to receive some or all of the special education and related services that the child would receive if enrolled in a public school." Instead, parentally-placed private school students are governed by a different framework under the IDEA. Under this framework, a public school district must (1) locate, identify and evaluate children with disabilities who are enrolled by their parents in private schools within the district,

and (2) allocate a proportional share of federal IDEA funds to provide special education and related services to parentally-placed private school children through their participation in the program assisted or carried out under Part B of the IDEA. 20 U.S.C. § 1412(a)(10)(A)(i)-(ii); 34 C.F.R. §§ 300.131-300.133. Part B funds must be spent by the school district on special education and related services for parentally-placed private school students in the district. The amount of the proportional share is determined by comparing the number of disabled students attending private schools in the district to the total number of children with disabilities being educated in the district. 20 U.S.C. § 1412(1)(10)(A)(i). As a result of this funding scheme, "[p]arentally-placed private school children may receive a different amount of services than children with disabilities in public schools." 300 C.F.R. § 300.138; <u>Greenland Sch. Dist. v. Amy N.</u>, 358 F.3d 150, 157 (1st Cir. 2004) (recognizing that special education services in private schools "are, not surprisingly, less extensive than the services that a disabled child enrolled in a public school is entitled to receive"); <u>Nieuwenhuis by Nieuwenhuis v. Delavan-Darien Sch. Dist. Bd. of Educ.</u>, 996 F. Supp. 855, 866 (E.D. Wis. 1998) ("Taken as a whole, the regulatory scheme reflects the fact that under the IDEA, when the parent of an eligible child opts out of a public school where a FAPE could be provided, that parent is opting for a lesser

entitlement.")

In this case, the District has presented evidence that the proportional share of federal Part B funds allocated to it for private school services amounted to $3,639.00. The cost for the student's full time interpreter exceeds $37,000 per year, more than ten times the amount available for all parentally-placed private schools in the district falling within the provisions of the IDEA. This fact alone demonstrates the inequity that would arise with respect to the other parentally-placed private school students if the District were required to fund a one-to-one ASL interpreter for the student.[4] In light of this evidence and

---

[4] Defendants contend that the District waived any argument concerning the cost of the ASL interpreter by failing to raise it before the Panel. However, the Court has the discretion to consider additional evidence that is relevant, non-cumulative and useful. See 34 C.F.R. § 300.516(c); Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 759-760 (3d Cir. 1995). Moreover, the administrative record reflects that the District did raise the cost of the student's placement at St. Anne's before the Panel, which can reasonably be said to incorporate the cost of a one-to-one ASL interpreter for the student. In this regard, the District also explained in its Closing Statement that parentally-placed private school children are only entitled to a portion of IDEA funding, and the District complained that the Panel sustained Defendants' objection to evidence regarding the cost of placing the student at St. Anne's. (D.I. 26, Ex. 8, District's Closing Argument at 28-29). In any event, for the reasons discussed infra n.5, the Panel appears to have lacked the authority to adjudicate this issue in the context of a due process hearing. Lastly and perhaps most importantly, the Court does not base its decision in this case on the cost issue alone. Rather, the Court's decision rests primarily on the applicable provisions of the IDEA which impose no liability on the District for declining to provide individualized services to a parentally-placed private school student.

because the IDEA imposes no obligation on the District to provide related services on an individualized basis to a parentally-placed private school student, the Court concludes that the Panel's decision was erroneous as a matter of law.[5] Accordingly, the Court will grant summary judgment in favor of the District.

## CONCLUSION

For the reasons discussed, the Court will dismiss the Department from this action, and in all other respects, grant the District's Motion For Summary Judgment. Having concluded that the District is entitled to summary judgment, the Court will deny as moot Plaintiffs' Joint Motion In Limine To Exclude Testimony By Any Witness Not Identified In Discovery (D.I. 42). In addition, the Court concludes that the filing of a surreply brief is unnecessary in this case, and therefore, the Court will deny Defendants' Motion For Leave To File A Surreply (D.I. 44).

An appropriate Order will be entered.

---

[5] In the alternative, the Court concludes that the Panel exceeded its authority in considering this issue. Complaints regarding the provision of services to parentally-placed private school students are not subject to due process procedures. 34 C.F.R. § 300.140(a). Rather, complaints concerning the services received by a disabled student in private school must be brought through the state administrative complaint system. It appears that no such complaint was filed here. Accordingly, the District is also entitled to summary judgment on this alternative ground.